**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | |
|---|---|
| CAROL BOWMAN, DORA ANDERSON, GWENDOLYN HART, RICHARD HOOVER, and ADAN TAPIA, <br><br> Plaintiffs, <br><br> v. <br><br> INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION, and DANIEL RUSYNIAK, the SECRETARY OF THE INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION, in his official capacity, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. _____ <br><br> Judge _____ |

## CLASS ACTION COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF

Plaintiffs Carol Bowman, Dora Anderson, Gwendolyn Hart, Richard Hoover, and Adan Tapia ("Plaintiffs"), by and through their undersigned attorneys, bring this action against the Indiana Family and Social Services Administration ("FSSA") and the Secretary of the FSSA in his official capacity, and in support state as follows:

### INTRODUCTION

1.     Carol Bowman has brain cancer. She suffers from headaches and twitches. She has no relatives close enough to provide care in her home in Terre Haute, Indiana—where Carol has lived for many years and worked as a secretary to a local judge and, later, as Terre Haute's first female police officer. If Carol is lucky, a friend will ask her to venture outside, but Carol spends most days alone.

1

2.      Carol seeks an assisted-living facility because, with her illness and treatment, she needs someone to be there. With assisted living, Carol would have someone to check on her and assist her if something goes wrong. She would be able to live with similarly situated residents. And she would have immediate access to medication, any necessary physical care, and consistent transportation to her many appointments.

3.      Despite Carol's need for assisted living and her eligibility for Medicaid under the FSSA's Aged and Disabled Waiver Program, Carol does not know when she will receive Medicaid-supported assisted living. On April 11, 2024, Carol received a letter from the FSSA stating that she had been approved to start receiving home and community-based services regarding a Non-Waiver Initial Service Plan. Four days later, on April 15, 2024, the FSSA determined that Carol met the required level of care and was interested in home and community-based services through the Aged and Disabled Waiver. But the FSSA has placed Carol on the Program's waitlist and refuses to release an available Program slot.

4.      Adan Tapia is a veteran who resides in Terre Haute. He suffers from several medical conditions and requires ongoing care. Adan sleeps on the couch in the house of his deceased son's ex-wife Maria and of his granddaughter. He seeks assisted living because he needs help with medication management and other daily needs.

5.      Like Carol, Adan is eligible for Medicaid under the FSSA's Aged and Disabled Waiver Program. He does not know when he will receive Medicaid-supported assisted living. Adan applied to the FSSA for coverage. On April 15, 2024, the FSSA determined that Adan met the required level of care and that he is interested in home and community-based services through the Aged and Disabled Waiver. But the FSSA has placed Adan on the Program's waitlist and refuses to release an available Program slot.

6.      The stories of Carol and Adan are not unique. There are thousands of stories about elderly or disabled Indiana residents who are eligible for Medicaid, who need assisted living, who do not want to stay in and would not benefit from nursing homes, but whose requests to the FSSA for Medicaid-supported assisted living for which they are eligible have effectively been denied by long and indefinite placements on waitlists.

7.      Plaintiffs bring this lawsuit to challenge the FSSA's decisions to not supply thousands of Indiana residents, some of Indiana's most vulnerable citizens, with Medicaid-funded aid for assisted living, despite the FSSA's ability to do so.

## CORE CLAIM

8.      For thousands of elderly and disabled Hoosiers, assisted living offers the opportunity for a measure of independence and dignity while receiving needed care and support. These individuals would otherwise require institutionalization in a nursing home, which would limit their independence and quality of life. Assisted living and community-based care thus offer the best path forward for thousands of Indiana residents and their families. Assisted living also provides benefits to the State, as it is significantly less costly than nursing homes or at-home care.

9.      Plaintiffs and the alleged Class (defined below) are individuals who wish to be placed in assisted-living facilities or are already in assisted living and wish to have their payments covered by Medicaid. To choose the option that affords them the best quality of life and care, Plaintiffs and the alleged Class enrolled in waiver programs (the 2024 Waivers) that, under 42 U.S.C. § 1396n(c), allow for Medicaid funding of assisted-living services. The 2024 Waivers thereby provide access to these services for people who otherwise could not afford them. Plaintiffs and the alleged Class have all been found eligible to receive these Medicaid benefits and have the right to receive them.

10.     But the FSSA (which administers Indiana's Medicaid program and thus the 2024 Waivers) has failed in its mandatory duty under federal law to ensure that these Medicaid-funded services are available to the community and, in particular, to Plaintiffs and the alleged Class. After running out of waiver slots in April 2024, new slots became available with the turn of the fiscal year on July 1, 2024, but the FSSA rations its waiver slots and places otherwise-eligible individuals on a waitlist.

11.     The waitlist is not predicated on a lack of availability for either waiver slots or space in assisted-living facilities. By the FSSA's own estimation, there are over new 10,000 waiver slots currently available, yet because of the FSSA's monthly rations, less than 1,000 per month have been released, through October. In fact, because of this rationing, the total waiver slots being used has decreased since July 1, 2024—meaning that, despite having thousands of available waiver slots to use, the FSSA has not kept pace with the Program's attrition. Likewise, the assisted-living facilities in Indiana are nowhere close to capacity, and there are thousands of available spots throughout Indiana.

12.     The FSSA is violating the rights of Plaintiffs and the alleged Class under federal law in at least three ways.

13.     First, the FSSA is violating the rights of Plaintiffs and the alleged Class under the Medicaid Act. In accepting federal funds, the FSSA agreed to promptly provide Medicaid-benefits to all eligible individuals who enroll for such benefits, and to follow all federal laws and regulations relating to the provision of Medicaid benefits. Plaintiffs have a right to reasonable promptness of enrollment from the waitlist when waiver spots are available. The FSSA's waitlist and rationing of waiver slots functionally denies eligible individuals from gaining the benefits to which they are entitled without an opportunity for a hearing.

14.     Second, the FSSA is violating the rights of Plaintiffs and the alleged Class under the Rehabilitation Act, which prohibits the FSSA from discriminating on the basis of infirmity or disability. As explained in greater detail below, the FSSA's waitlist and rationing of waiver slots do exactly that.

15.     Third, the FSSA is violating the rights of Plaintiffs and the alleged Class under the Americans with Disabilities Act by discriminating against and denying access to federally funded services for individuals who qualify as disabled. Under the Supreme Court's decision in *Olmstead v. L.C.,* the FSSA must provide community-based services to individuals with disabilities when (1) such services are appropriate, (2) the affected persons do not oppose community-based services, and (3) community-based services can be reasonably accommodated, taking into account the resources available to the public entity and the needs of others who are receiving disability services from the entity. Each of those conditions is present here.

16.     For these reasons, Plaintiffs respectfully ask the Court to grant a preliminary and a permanent injunction ordering the FSSA to rescind the waitlist and cease the rationing of waiver slots, along with any other relief listed in the Prayer for Relief.

## PARTIES, JURISDICTION, AND VENUE

17.     Plaintiffs are Indiana residents who (a) qualify for and are eligible for Medicaid assistance; (b) have a need for community-based services and assisted-living care, and do not need institutionalization in a nursing home; and (c) are currently on the waitlist for a waiver slot from the FSSA for Medicaid coverage of assisted-living care.

18.     Plaintiff Carol Bowman resides in Terre Haute, Indiana. She needs assisted living because she has early-stage brain cancer, currently lives by herself without family, and needs the social environment and freedom of movement available through assisted living. She is eligible for

Medicaid under the FSSA's Aged and Disabled Waiver Program, but she has been on the Program's waitlist since April 2024.

19.    Plaintiff Dora Anderson resides in Rosedale, Indiana. She is eligible for Medicaid under the FSSA's Aged and Disabled Waiver Program, but she has been on the Program's waitlist since June 5, 2024.

20.    Plaintiff Gwendolyn Hart resides in Valparaiso, Indiana. She is eligible for Medicaid and currently lives in an assisted-living facility that she pays for because she suffers from high blood pressure, diabetes, neuropathy, and sciatica and needs help cleaning and cooking. She would not live in a nursing home. She applied to the FSSA for Medicaid assistance. The FSSA initially denied Gwendolyn's application but, after Gwendolyn appealed, the FSSA approved the application but informed her in a zoom hearing on the appeal, on October 10, 2024, that she has been put on the Program's waitlist.

21.    Plaintiff Richard Hoover resides in Valparaiso, Indiana. He currently lives in an assisted-living facility where he was admitted pending approval of FSSA's Aged and Disabled Waiver. Richard cannot afford the monthly payments and is at risk of becoming homeless. Richard is eligible for Medicaid under the FSSA's Aged and Disabled Waiver Program, but he has been on the Program's waitlist since April 2024.

22.    Plaintiff Adan Tapia resides in Terre Haute, Indiana. He lives with his deceased son's ex-wife, Maria, and his granddaughter, and he cannot afford assisted living. Adan is eligible for Medicaid under the FSSA's Aged and Disabled Waiver Program, but he has been on the Program's waitlist since April 2024.

23.    Defendant FSSA is a governmental agency that was formed under the laws of the State of Indiana and is located at 402 W. Washington Street, P.O. Box 7083, Indianapolis, IN

46207-7083. The FSSA is a healthcare and social-services funding agency that, among other things, operates Indiana's Medicaid and Medicare programs.

24.    Defendant Daniel Rusyniak, M.D. is the Secretary of the FSSA and the duly appointed head of that agency and is being sued in his official capacity under 42 U.S.C. § 1983.

25.    The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331.

26.    Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

### *Assisted-Living Facilities and Community-Based Care*

27.    Assisted-living facilities and other community-based care provide personal care, community engagement, and other support to the elderly and people who are otherwise physically or mentally disabled, while also providing opportunities for maintaining as much independence as possible.

28.    The services provided by these facilities are critical to allowing those who are eligible to receive them to have a higher quality of life and greater independence. There is a substantial demand for these services.

29.    When somebody is eligible for, but unable to access an assisted-living facility, there are two primary alternatives. The first is living without any such support and, thus, risking the person's safety and placing the burden of care on the person's family (if anyone). The second is entering institutional care—*i.e.*, a nursing home—which generally is a more expensive alternative that also has the effect of significantly curbing the person's independence and quality of life.

30.    When a person is unable to access assisted-living services because of a lack of financial resources, Medicaid will provide financial support. Without access to Medicaid funding, many individuals would not be able to afford assisted-living facilities.

31.     Medicaid is a cooperative federal-state program, codified in the "Medicaid Act" at 42 U.S.C. § 1396 *et seq.,* through which the federal government provides financial assistance to states to furnish medical and personal care to needy individuals.

32.     Two-thirds of Medicaid funding, including for assisted-living facilities, is provided by the federal government. The remaining is funded by state governments. While state participation in Medicaid is voluntary, a state that chooses to participate must, as a condition of receiving federal funds, comply with the requirements established by federal law—including the Medicaid requirement that participating states must serve all eligible beneficiaries.

33.     Indiana participates in the Medicaid program and is thus subject to all requirements of federal Medicaid law. Indiana's Medicaid program is administered by the FSSA.

34.     Medicaid-funded care through assisted-living facilities is less expensive than providing that care through nursing homes. Medicaid-funded care through assisted-living facilities can also be less expensive than providing at-home care, which involves caregivers visiting residents at home, deliveries of food, issuance of emergency-call pendants, and home modifications. The original intent for the creation of Home and Community Based Services (the term used by the federal government which encompasses assisted living facilities) was that it would be an alternative for states to reduce the cost for nursing-home care.

35.     Indiana's average daily Medicaid rate for skilled nursing is approximately $306. For assisted-living facilities, that daily Medicaid rate is approximately $112.

36.     Historically, Indiana has had one of the highest percentages of its Medicaid spending towards institutionalizing its patients of any state in the country.

*The Waiver Program*

37.     Under 42 U.S.C. § 1396n(c)(1), to allow a state to provide home or community-based services to Medicaid recipients who otherwise would require institutionalization, the federal government may waive the state's obligation to comply with certain laws and regulations.

38.     Under 42 U.S.C. § 1396a(a)(8), "all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals."

39.     Indiana operates several home and community-based Medicaid waiver programs.

40.     Through the Aged and Disabled Waiver Program, the FSSA provided home and community-based services to persons at "nursing facility level of care"—that is, for persons who, in the absence of the services, would require placement in a nursing facility.

41.     Indiana's most recent iteration of the federally approved Aged and Disability Waiver took effect on July 1, 2024, and will remain in effect until June 30, 2029. This newest version splits the Aged and Disability Waiver into two waivers based on age (the "2024 Waivers"). The first is for those 59 years of age or younger and is called the Health & Wellness Waiver ("HW Waiver"). The second is for those 60 years of age or older and is called the PathWays Waiver ("PW Waiver").

42.     Through the 2024 Waivers, participants receive specific types of services, detailed in the federally approved waiver application, that are intended to ensure that the participants' needs are met and that the participants can reside in community-based settings. Assuming individuals are eligible under the 2024 Waivers, they may seek assisted-living arrangements or other community-based care with expenses largely covered by Medicaid. The majority of those seeking assistance under the 2024 Waivers have either a disability, a personal issue related to age, or both.

43.    Indiana's waiver program is consistent with the FSSA's stated policy goals. For eight years, including in reports to Indiana's General Assembly, the FSSA emphasized the importance of providing access to home and community-based services, including assisted living.

44.    For example, in an October 2017 report to the General Assembly, the FSSA explained the need for "commitment to maintaining open access to the current A&D Waiver to **avoid wait list conditions** that may push people to nursing facility care and pressure non-Medicaid sources to cover gaps." (Emphasis added.) Likewise, in presentations from April 2021 through October 2022, the FSSA observed that the "key result" for moving to managed care is to "[e]nsure Hoosiers have access to home and community-based services **within 72 hours**." (Emphasis added.) And in applying for the PW Waiver, the FSSA explained that "[t]hrough PathWays, Indiana seeks to achieve the following: Ensure that Hoosiers can choose to age at home and simplify access to HCBS."

45.    To support this goal, the FSSA has sought federal approval for additional waiver slots, including (on information and belief) at mid-year.

### Waiver Waitlist

46.    Despite the better quality of life that assisted living provides, and despite the FSSA's stated commitment to providing community-based care to those who qualify, the FSSA has severely curtailed the admission of otherwise-eligible individuals into assisted-living facilities.

47.    In April 2024, the FSSA announced that it was implementing a waitlist for those seeking services under the Aged and Disabled Waiver. On its website, the FSSA stated that "[t]he Aged and Disabled Waiver has a maximum capacity each year for individuals to receive services through the Aged and Disabled Waiver. This number is determined in the state's Aged and Disabled application, which is approved by the Centers for Medicare and Medicaid Services. FSSA has reached the currently allowed limit and must implement a waiting list for individuals seeking

to access services through the Aged and Disabled Waiver." This is despite the fact that, in the past, the FSSA sought additional waiver slots when warranted.

48.     There is a reset on waiver slots at the beginning of Indiana's fiscal year July 1. Thus, on July 1, 2024, approximately 10,574 waiver slots became available for the PW Waiver, and approximately 2,937 slots became available for the HW Waiver.

49.     As of July 1, 2024, more than 13,000 Indiana residents were on the FSSA's waitlist, and the FSSA was releasing just 800 waiver slots per month for the PW Waiver and 125 slots per month for the HW Waiver—despite FSSA data suggesting that, of the 39,842 slots in the PW Waiver, approximately 10,000 are available, and of the 16,127 slots in the HW Waiver nearly 3,000 slots are available.

50.     On October 7, 2024, the FSSA issued a press release announcing that the frequency of the monthly release of PW Waiver slots would increase from 800 per month to 1,200 per month, and the frequency of the monthly release of HW Waiver slots would increase to 500 per month. However, this still does not provide services for thousands of otherwise-eligible Indiana residents on the waitlist and still creates a backlog of those who need access to assisted living. Despite the increase in monthly release of waiver slots, there are still thousands of Hoosiers who remain on the waitlist and there are further waiver slots that the FSSA could make available.

51.     Further, data that the FSSA publishes on its website through its monthly Medicaid Enrollment Report suggests that the rationing of waiver slots by the FSSA means waiver enrollment cannot match program attrition or budgeted waiver enrollment.

52.     Thus, the waitlist is neither predicated on a lack of available waiver slots nor on a lack of demand for those slots. And despite availability, the FSSA is rationing these slots (artificially maintaining an extensive waitlist).

## VIOLATIONS OF RIGHTS UNDER FEDERAL LAW

53.     The implementation of the FSSA's waitlist for the waiver program violates the rights of Plaintiffs and the alleged Class under federal law.

### *The Medicaid Act*

54.     The FSSA's waitlist violates the Medicaid Act.

55.     Under the Medicaid Act, Indiana has voluntarily agreed to abide by certain federal regulations and provide services to Medicaid-eligible individuals. The Plaintiffs and the alleged Class have rights under the Medicaid Act to receive assistance when eligible and to receive reasonably prompt determinations resolve denials and deferrals of eligibility.

56.     The FSSA's waitlist breaches the rights of Plaintiffs and the Class because it bars access for otherwise-eligible individuals to Medicaid-funded services. The waitlisting prevents Plaintiffs and the alleged Class from obtaining Medicaid-funded assisted living services, despite their eligibility and despite the appropriateness of the services for them.

### *The Americans with Disabilities Act*

57.     The FSSA's waitlist violates the ADA.

58.     Under the ADA, the FSSA must provide community-based services to persons with disabilities when "the State's treatment professionals have determined that community placement is appropriate, the transfer from institutional care to a less restrictive setting is not opposed by the affected individual, and the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities." *Olmstead v. L.C.*, 527 U.S. 581, 587 (1999).

59.     Each *Olmstead* condition is present for Plaintiffs and the alleged Class.

   a. Assisted living is indisputably appropriate for Indiana's waitlisted residents because they already have been determined to be eligible for those services.

b. Assisted living is what Plaintiffs and the alleged Class desire. Indeed, they are on the waitlist because they affirmatively seek those services.

c. Assisted living can be reasonably accommodated by Indiana. There are thousands of open spots in assisted-living facilities, and upon information and belief, the FSSA has access to sufficient Medicaid funds to cover the admission of Indiana's waitlisted residents. This is especially true given that it is significantly cheaper for Indiana to provide care through assisted-living facilities rather than providing that care through nursing homes.

### *The Rehabilitation Act*

60.    The FSSA's waitlist violates the Rehabilitation Act.

61.    Under Section 504 of the Rehabilitation Act, "[n]o otherwise qualified person with disabilities shall, solely by reason of his or her disability, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. § 794(a).

62.    The FSSA administers Medicaid in Indiana, and thus administers a program receiving federal financial assistance.

63.    Each named Plaintiff and each member of the alleged Class is a "qualified person with disabilities" within the meaning of Section 504, because they (1) have physical or mental impairments that substantially limit one or more major life activities; and (2) meet the essential eligibility requirements for long-term community-based care under Indiana's Medicaid program and are thus "qualified."

64.    Regulations implementing Section 504 of the Rehabilitation Act require that a public entity administer its services, programs, and activities in "the most integrated setting appropriate" to the needs of qualified individuals with disabilities. 28 CFR § 41.51(d).

65.    Section 504's regulations prohibit recipients of federal financial assistance from utilizing criteria or methods of administration that have either:

a.  the effect of subjecting a qualified person with a disability to discrimination on the basis of the disability; or

b.  the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program with respect to handicapped persons.

66.    The FSSA's waitlist violates these criteria with respect to Plaintiffs and the alleged Class by denying to individuals with disabilities, who are otherwise eligible for Medicaid-funded placement in an assisted living facility, access to Medicaid benefits (and thus access to the facilities).

## IRREPARABLE HARM

67.    The FSSA's waitlist is causing irreparable harm to Plaintiffs and the alleged Class. Because of the FSSA's waitlist, they have functionally lost access to assisted-living facilities and other community-based care.

68.    Thousands of individuals (under both 2024 Waivers) have been waitlisted and there has been a dramatic reduction of admissions into assisted-living facilities or other community-based care facilities. These individuals, although eligible for admission to such facilities (and thereby eligible for the community-based care they provide) are thus being denied these Medicaid benefits by the FSSA's waitlist.

69.    The risk of institutionalization of these individuals is thus high—meaning that thousands of Indiana residents are now stuck in limbo and forced to choose between accepting institutionalization (as eligible individuals otherwise requiring nursing home care) or foregoing care indefinitely. This harm is irreparable, and there is no adequate remedy at law.

70.    In addition, by blocking access to assisted-living facilities, the waitlist ensures increased costs on Plaintiffs and the alleged Class, as well as on the State. Indeed, care in a nursing home costs 2.5 times the cost of assisted living.

## CLASS ACTION ALLEGATIONS

71.     Pursuant to Fed. R. Civ. P. 23(a) and (b)(2), the named Plaintiffs bring this action on behalf of themselves and all other persons similarly situated (the "Class").

72.     The Plaintiffs bring this action on behalf of themselves and a Class pursuant to Fed. R. Civ. P. 23(b)(1)(A), (b)(2), and/or (b)(3).

73.     The proposed Class consists of:

> all individuals who, during the period July 1, 2024 to the date of certification, were on or were placed on the waiver waitlist for either the PathWays Waiver or Health & Wellness Waiver and are seeking Medicaid-funded access to assisted living facilities.

74.     This Class seeks certification of claims for declaratory and injunctive relief.

75.     Joinder of the entire Class is impracticable because the Class Members are numerous—in the thousands—and are persons with disabilities and/or other personal issues. Some of the Class Members are unable to give their consent except through guardians or family members.

76.     The Plaintiffs' claims are typical of the claims asserted on behalf of the Class.

77.     The Plaintiffs do not have any interests adverse or antagonistic to any claims or potential claims of the Class.

78.     The Plaintiffs will fairly and adequately protect the interests of the members of the alleged Class.

79.     The Plaintiffs are committed to the vigorous prosecution of this action and have retained counsel competent and experienced in this type of litigation.

80.     The Plaintiffs do not seek monetary damages. Hence, the burden and expense of prosecuting this litigation makes it unlikely that members of the Class would or could prosecute

individual actions. If individual actions were pursued by Class Members, prosecution of those individual claims would be impracticable and inefficient.

81.     This Court is the most appropriate forum for adjudicating the claims at issue, which arise under federal law.

82.     The Plaintiffs do not anticipate any difficulty in the management of this action as a class action.

83.     There are many difficult questions of law and fact common to the Class, which predominate over any questions which may affect individual Class members. The predominant common questions of law and fact include, among others:

> a.  Whether Defendants are liable for violations of the Medicaid Act;
>
> b.  Whether Defendants are liable for violations of the ADA;
>
> c.  Whether Defendants are liable for violations of the Rehabilitation Act; and
>
> d.  Whether the Class is entitled to equitable and injunctive relief.

84.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

85.     Plaintiffs seek injunctive relief, and attorneys' fees and expenses as permitted by law, on behalf of themselves and the Class.

### COUNT I: VIOLATIONS OF THE MEDICAID ACT

86.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein, and they allege this Count against both Defendants.

87.     At all relevant times, Defendant Secretary of the FSSA was acting in his official capacity and under color of state law.

88.     Indiana has voluntarily assumed certain obligations under federal law in return for federal funding under 42 U.S.C. § 1396, *et seq.*

89.      Plaintiffs and the alleged Class have rights under the Medicaid Act to receive

assistance when eligible and to receive reasonably prompt determinations resolve denials and

deferrals of eligibility. This includes the right to receive Medicaid services for which they are

eligible with reasonable promptness. 42 U.S.C. § 1396a(a)(8).

90.      By implementing the waitlist, Defendants violated those rights.

**COUNT II: VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT**

91.      Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein,

and they allege this Count against both Defendants.

92.      At all relevant times, Defendant Secretary of the FSSA was acting in his official

capacity and under color of state law.

93.      Under the ADA, the FSSA must provide community-based services to persons with

disabilities when (1) such services are appropriate, (2) the affected persons do not oppose

community-based services, and (3) community-based services can be reasonably accommodated,

taking into account the resources available to the public entity and the needs of other who are

receiving disability services from the entity. *Olmstead*, 527 U.S. at 587.

94.      Plaintiffs and the alleged Class are seeking such services, which the FSSA has

failed to provide.

95.      As of July 1, 2024, there are thousands of available waiver slots under each of the

PW and HW Waivers, and there are available spots at assisted-living facilities and other

community-based care facilities. Therefore, such community-based services can be reasonably

accommodated.

96.      Further, the FSSA has emphasized the need to avoid waitlists, and the cost of care

at assisted living facilities is significantly cheaper than at nursing homes. There is thus no

justification for a waitlist, let alone a waitlist of thousands of Indiana residents.

97.    For these reasons, and further upon information and belief, the needs and resources of the State of Indiana do not outweigh its requirements to provide community-based services to the Plaintiffs and the Class, and the failure to do so violates the rights of Plaintiffs and the alleged Class under the ADA.

## COUNT III: VIOLATIONS OF THE REHABILITATION ACT

98.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein, and they allege this Count against both Defendants.

99.    At all relevant times, Defendant Secretary of the FSSA was acting in his official capacity and under color of state law.

100.    Under Section 504 of the Rehabilitation Act, "[n]o otherwise qualified person with disabilities shall, solely by reason of his or her disability, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. § 794(a).

101.    The FSSA administers Medicaid in Indiana, and thus administers a program receiving federal financial assistance. Each named Plaintiff and member of the Class is a "qualified person with disabilities."

102.    Section 504's regulations prohibit recipients of federal financial assistance from utilizing criteria or methods of administration that have the effect of subjecting a qualified person with a disability to discrimination on the basis of the disability, or that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program with respect to handicapped persons.

103.    Defendants have placed Plaintiffs and the alleged Class on a waitlist and artificially restricts the number of slots being released, thereby denying access to assisted-living facilities and community-based care in violation of Section 504's integration mandate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

i.      Certify this case to proceed as a class action;

ii.     Enter declaratory relief that Defendants have breached their obligations under the Medicaid Act, the ADA, and the Rehabilitation Act;

iii.    Enter injunctive relief, both preliminarily and permanently, to enjoin Defendants from placing Plaintiffs and members of the alleged Class on the FSSA's waitlist as described in this Complaint;

iv.     Award to Plaintiffs the costs of this action, and award reasonable attorneys' fees and expenses, pursuant to 42 U.S.C. § 1988; and

v.      Grant such other and further relief as the Court may deem proper.

Dated: October 30, 2024                    Respectfully submitted,

**Plaintiffs Carol Bowman, Dora Anderson, Gwendolyn Hart, Richard Hoover, and Adan Tapia**

By:  _/s/ Melissa Davidson_

Melissa Davidson #26068-49
HANKEY MARKS & CRIDER
429 E. Vermont St., Suite 200
Indianapolis, IN 46202
Tel: (317) 599-4111
Email: mdavidson@hankeylaw.com

Eamon P. Kelly (pro hac vice pending)
Nathan A. Shev (pro hac vice pending)
Sean M. Koller (pro hac vice pending)
Paul E. Bateman Jr. (pro hac vice pending)
SPERLING & SLATER, LLC
55 West Monroe Street, Suite 3200

Chicago, Illinois 60603
Tel:     (312) 641-3200
Email:  ekelly@sperling-law.com
           nshev@sperling-law.com
           skoller@sperling-law.com
           pbateman@sperling-law.com